KATHARINE W. KOMP, as Administratrix of the Goods, Chattels and Credits of ALBERT KOMP, JR., Deceased, Plaintiff, *v.* ARTHUR S. LURIA, Defendant.

(Supreme Court, New York Special Term, February, 1905.)

Contract — Superintending construction of building — Compensation for services — Evidence — Transaction with decedent — Code § 829.

> Where after the death of a builder before the completion of an apartment house, the construction of which he had agreed to superintend for ten per cent. of the net profits, as prescribed by the contract, and receive no benefit or emolument except from the owner, the latter, after agreeing with the widow of the builder to pay the ten per cent. discovers that the builder had received commissions from contractors on the building, makes a further agreement with the widow that such commissions, whether received by her husband during his lifetime or thereafter to be received, should be considered part of the profits arising from the enterprise and that she should pay back such amounts as her husband had received during his lifetime and that any other commissions thereafter received should be deducted from the ten per cent. interest belonging to her husband's estate, the owner is not warranted in repudiating the first agreement made by him with the widow because of subsequent discoveries of misdoing on her husband's part and she as administratrix is entitled to an accounting, upon which there should be taken into consideration not only the commissions, but also the damage, if any, suffered by the defendant by reason of omitted or defective work upon the building, or necessary cost thereof, for which he had not already reimbursed himself and which was due solely to the fault of plaintiff's intestate.
>
> A limitation in the first agreement between the widow and the owner of the building, that the payment of the ten per cent. should only be made in case of a sale of the house that winter, having been omitted from the second agreement between them, reestablished the contract upon its original basis without such limitation.
>
> In an action by the administratrix for an accounting by the owner of the apartment house, erected under the superintendence of her intestate, testimony of the defendant, in effect denying that certain information had been given him by the deceased, is incompetent under section 829 of the Code of Civil Procedure.

ACTION for an accounting and to impress a trust.

Henry Brill, for plaintiff.

Clifford W. Harbridge, for defendant.

GIEGERICH, J. This action is brought for an interlocutory decree directing the defendant to account to the plaintiff for the rents received from the apartment house in suit and for judgment in favor of the plaintiff for a percentage of the net rents up to the time of judgment and decreeing that the plaintiff is entitled to a percentage of the rents and profits thereafter accruing, and impressing a lien upon the property for such percentage of rents, and for a percentage of the profits that may be received upon a sale of the property, and declaring her interest in the property to such extent. The facts stated in outline are as follows: On the 26th day of March, 1900, the defendant, then owning a plot of ground on West One Hundred and Sixteenth street, east of Amsterdam avenue, borough of Manhattan, and desiring to erect thereon an apartment house, entered into an agreement with the plaintiff's intestate, Albert Komp, Jr., who was an experienced builder, whereby the latter was to assist and advise the defendant in every way in the erection of the projected building, for which services Komp was to receive one-tenth of the net profits, which it was guaranteed by the defendant would not be less than ten dollars per day for each full working day spent by Komp in the enterprise. It was further provided that, if Komp should fail to superintend the building to its substantial completion or sale by reason of death or any other acts beyond his control, his compensation should be limited to the ten dollars per day received up to the time of his stopping work, and it was further stipulated that he should act solely in the interests of the defendant and should not receive "directly or indirectly any benefit or emolument" except from the latter. The terms of the agreement also prescribe how the profits should be arrived at, namely, by charging against the enterprise every expenditure, including commissions, architect's fees, interest on loans, the defendant's own investment, expenses of obtaining loans and advertising and all other expenses until the receipt of the proceeds of

the sale of the building. The contract, which is in the form of a letter written by the defendant Komp, then continued: "In case of not selling the building all net earnings therefrom shall go to reimbursement of my expenditures, including my advances to you, until the building shall be entirely without cost to me, and then the earnings shall be divided between us in the proportion of ten per cent. (10%) to you and ninety per cent. (90%) to me until its sale." In accordance with the agreement Komp devoted his time to the undertaking from March, 1900, until September sixth of that year, on which date he died suddenly. A question much mooted upon the trial and in the briefs was whether or not the building was substantially completed on the date of Komp's death. The facts bearing upon this point are not disputed to any considerable extent, the chief issue being whether, upon the facts shown, it could properly be said that the structure was substantially completed. Upon this question I am inclined to the view that where so many and such important things remained to be done as are here shown it would be stretching the term "substantial completion" unduly to hold that the conditions of the contract were complied with in this respect. In the view I take of the entire case, however, this question is not important, because of things that occurred after Komp's death between his widow (the plaintiff) and the defendant. A few days after the funeral the defendant assured the plaintiff that he considered the building substantially completed and that her interest should remain the same as though her husband had lived. About two weeks later he notified her that Komp had broken his contract by receiving commissions from contractors on the building. Still later, in further interviews between them, it was agreed that such commissions, whether received by Komp during his lifetime or thereafter to be received, should be considered a part of the profits arising from the enterprise and that the plaintiff should pay back to the defendant such amounts as Komp had received during his lifetime, and that any other commissions thereafter received should be deducted from the ten per cent. interest belonging to the estate. The only written evidence of this agreement consists in a re-

ceipt given by the defendant to the plaintiff upon the steamship as she was about to sail with her daughter to Italy for the benefit of the latter's health. The plaintiff testified that the defendant had agreed to bring her a written acknowledgment of her ten per cent. interest to her hotel on different occasions, but failed to do so, and that finally, as the vessel was about to sail, she told him that unless she received the paper she would go ashore, whereupon he wrote and gave her the following: "Ocober 6, 1900. Received from Mrs. Albert Komp, four hundred and thirty-seven 50-100 ($437.50) dollars in payment of one-half of commissions received by Mr. Komp, from plumbing, framing and roofing contracts. The remaining one-half of the commissions are to be deducted, together with any other commissions received from the ten per cent. of the net profits of the operation coming to the estate of Mr. Komp. Arthur S. Luria." On behalf of the defendant it is claimed that, after the giving of this paper, he discovered that the building was not what the contract called for, but that inferior materials had been used, and omissions had been made. Much of the evidence on these points is indefinite and conflicting and unsatisfactory to such an extent as to render a conclusion very difficult. That there were some defects and omission is undisputed, but just what they all were and to what extent Komp could properly be held responsible for them, and to what extent the defendant reimbursed himself by making deductions from the contract price in his final settlements with the different contractors, or to what extent he might have done so, but did not, and when he first obtained knowledge of the various defects complained of, are matters which the evidence leaves in doubt. The defendant's attorney insists that, while the agreement between Mr. Komp and the defendant, as evidenced by the receipt of October sixth might operate as a waiver of Komp's breach of contract in receiving commissions, it could not be extended to cover other breaches subsequently discovered, namely, his failure to hold the various contractors to their agreements. The general and well known rule is that there can be no waiver without full knowledge, but in the present case the application of this rule is rendered difficult by the fact that

on November 14, 1900, the defendant wrote to the plaintiff the following letter:

" NEW YORK, *November* 14, 1900.

"My Dear Mrs. Komp:—Further developments of Mr. Komp's dealings with the contractors on the Hillcrest make it impossible for any share of the profits of the operation to become due him or you. The matters brought to your attention just before sailing are trivial compared to his conduct in the trim, mason and cut stone contracts. While I dislike calling your attention to such matters during what I hope is a pleasant trip, I do so in order that you may regulate your financial affairs without expecting to receive anything from me in the future.    *    *    *    Yours very truly,

"ARTHUR S. LURIA."

While still later, in December, he wrote as follows:

"NEW YORK, *December* 9, 1900.

"My Dear Mrs. Komp:—    *    *    *    As to commissions it is difficult to determine the exact amount, as the contractors are trying to evade them. Mr. McDowell assures me his bid for trim, &c., according to the specification given him (of which I am now the holder), was between $21,000 and $22,000, and he was ready to take $21,000 for the contract. Mr. Komp cut out over $1,000 of the trim from this specification, and gave the contract to Kertscher at $23,000, and told me McDowell's bid was $23,800. Kertscher says he gave nothing and promised nothing to Mr. Komp, but it is evident that this is not true, as I lost over $3,000 by his getting the contract. Hoerner admits paying Mr. Komp $150 out of one payment of the stone contract and some other sums later. Zimmerman says he made an agreement to pay Mr. Komp $1,250 commission on the 124th street job, Bleecker street and Hillcrest, of which over $600 was on account of Hillcrest. These sums, with the one-half of the Kelly, Krausch & Partschefeld commissions, and the sums paid for stone to Mr. Komp and his successor, Mr. Campbell, will undoubtedly exceed ten per cent. of any profit coming from the sale of the building. Very sincerely yours,

"ARTHUR S. LURIA."

From these letters it is apparent that the defendant, long after the discovery of the defaults on Komp's part, in addition to the matter of the commissions, still recognized the agreement made with Mrs. Komp as in effect, and the only reason he assigned why she should expect nothing from him was that the various offsets would more than equal the ten per cent. of profits. It is further argued in support of the defense that the defendant's agreement with the plaintiff was limited to any profit that might be realized upon a sale of the building during the winter following Komp's death, and that as no such sale took place the plaintiff has no standing. If the defendant had so testified I would have no hesitation in finding in his favor, because I believe not only that he has acted in the matter with generosity, but also that he has testified with absolute truthfulness. The record shows, however, that according to his testimony, in his first interview with the plaintiff, which occurred before he discovered any of the defaults on the part of Mr. Komp, and when his action in allowing her an interest, notwithstanding the building was not substantially completed, was purely a gratuity on his part, such a limitation was imposed; but, when later he discovered that commissions had been received, and the new agreement was made that Komp's estate should continue to have a ten per cent. interest, the same as though he had continued to live, provided those commissions should be paid back, nothing was said in the defendant's testimony as to limiting this later agreement to the following winter and to the event of the sale only, and no such limitation appears in the writing that was given on October sixth. Under these circumstances I think it should be held that this later agreement, based upon the receipt of money apparently from Mrs. Komp individually as a beneficiary of the estate and before she was appointed as administratrix, re-established the contract upon its original basis and without the limitation imposed by the defendant in the first conversation held. As before said, the letter of December ninth, above quoted, shows that the defendant at that time still recognized the plaintiff's interest in the property, and consequently something occurring after that date must be shown if he is to be allowed to

successfully take the position now attempted, namely, that subsequent discoveries of misdoing on the part of Komp were such as to warrant him in repudiating the agreement formerly made by him, or were such as of themselves to exonerate him from such former agreement. I cannot find in the record, however, any subsequent discoveries of such an important character. One such subsequent disclosure is the circumstance of the addition of about $500 to the Kelly bid, but this has little importance, because the defendant was aware, even before October sixth, of the payment of a commission by Kelly of about that amount. Another discovery that may have been subsequent to the letter of December ninth (although the evidence is not explicit on the point) is the ascertainment of the fact that there was no flue from the laundry as the plans called for, but inasmuch as the contractor who was responsible for this work had not at that time been paid in full and was undisputedly financially responsible for any failure to live up to the contract, and inasmuch, furthermore, as the defendant compromised with him by deducting $500 from the contract price, I am of the opinion that this discovery, even if subsequent, cannot be given the effect sought for it. The general situation that resulted was that the defendant not only retained the money he had received from the plaintiff personally, but, as disclosure after disclosure was made, he continued to take advantage of, and to receive the benefit of, such disclosures by receiving credit for the commissions or by securing abatements on the contract price, as the case might be. The consequence was to reduce the entire cost of the building by the aggregate of such amounts and to correspondingly increase the profits, if any profits there are to be. The final effect has thus been to eliminate, so far as possible, the consequences of Komp's misdoings and to restore the parties to the positions they would have occupied had Komp been faithful to his obligations. Upon the whole case I am of the opinion that the plaintiff is entitled to an accounting, but that upon such accounting there should be taken into consideration not only the commissions, but also the damage, if any, suffered by the defendant by reason of omitted or defective work upon the

Supreme Court, February, 1905.          [Vol. 46.

building, or necessary cost thereof, for which he has not already reimbursed himself and which is due to the fault of Komp and not of himself. The provisions in detail of the decree can best be determined upon the settlement of the decision. The proposed findings should be exchanged and permission is given to either side to submit any memorandum desired on such findings within five days after such exchange. The motion made at the end of the case to strike out certain testimony, and on which no ruling was made at the time, I have decided to grant and give an exception to the defendant. The effect of such testimony was to deny that the information in question had been given to the defendant by the deceased, which was incompetent under section 829 of the Code of Civil Procedure. Haughey v. Wright, 12 Hun, 179; Brayman v. Stephens, 79 id. 28, and cases cited.

Ordered accordingly.

---

Percy Elliott Bateman and Frederick William Newton, Executors and Trustees Under the Will of Thomas Connock Elliott, Deceased, Plaintiffs, *v.* Anna Benkard Hunt and William Jay and Egerton S. Winthrop, Jr., as Substituted Trustees for Anna Benkard Hunt, Under a deed of Trust, et al., Defendants.

(Supreme Court, New York Special Term, February, 1905.)

Creditor's suit — Setting aside trust deed fraudulent as to creditor — Judgment and return of execution nulla bona — When not essential to maintenance of suit — Enforcement of mortgage of interest reserved under trust deed — Foreign executors as plaintiffs.

The rule of law in this State that the recovery of a judgment and the return of an execution issued thereon unsatisfied are essential prerequisites to the maintenance of an action in the nature of a creditor's bill, does not extend so far as to deny to a creditor the aid of the equity powers of the court where the situation is such as to render it impossible for him to take the preliminary steps.

Where in an action brought in this State by foreign executors and trustees to set aside a deed of all the grantor's property, real and